* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion of award, except for minor modifications. Accordingly the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties hereto are subject to and bound by the North Carolina Workers' Compensation Act.
2. There existed an employer/employee relationship between plaintiff and defendant-employer Queen City Manufacturing as of October 1, 2003.
3. Defendant-carrier The Hartford is the workers' compensation insurance carrier.
4. Plaintiff's average weekly wage is $565.25, yielding a compensation rate of $376.83.
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On October 1, 2003, plaintiff suffered a compensable injury by accident while employed by Queen City Manufacturing. Plaintiff had been employed by Queen City for 16 years. This case was initially accepted without prejudice pursuant to a Form 63. Plaintiff was paid temporary total disability benefits for approximately three months, and his medical care was coordinated by defendants. Defendants then filed a Form 61 within the time allowed by statute, denying plaintiff's claim.
2. On October 1, 2003, plaintiff was working alone on third shift. During this time, he was packing cones in a box as they came down an assembly line. Plaintiff was required to pack the box and, once it was full, transfer it from a table to a pallet. The box in question weighed approximately 40 to 60 pounds when filled. As plaintiff was alone on the shift from 10:00 p.m. until 6:00 a.m., he was unable to report his injury or receive any assistance until his first shift supervisor, John Lesky, arrived at 6:00 a.m. Once Mr. Lesky arrived, plaintiff informed him that he had injured his back during the shift and was going home.
3. Plaintiff filled a box of cones, lifted the box off the table, and placed it on the pallet. As he was lifting, plaintiff felt a severe pain in his lower back going down his right leg. Plaintiff was then forced to the floor where he remained for five to six minutes until he felt some relief. Plaintiff was then able to get off the floor and into a chair. As the cones were still coming down the assembly line, plaintiff sat in the chair and allowed the cones to fall into the boxes during the remainder of his shift.
4. As the day progressed, plaintiff continued to experience pain. As a result, he sought medical treatment with Dr. Blakeney. Dr. Blakeney referred plaintiff to Dr. Welshofer with Carolina Orthopaedic.
5. Plaintiff initially treated with Dr. Welshofer at Charlotte Orthopaedic on October 3, 2003, relating a history of an onset of pain at work on October 1, 2003. Dr. Welshofer wrote plaintiff out of work and ordered a lumbar CT scan. After the lumbar CT scan was completed, Dr. Welshofer administered epidural steroid injections and permitted plaintiff to return to work on light duty. Plaintiff returned to work on light duty but continued to have problems and was again placed out of work by Dr. Welshofer.
6. After a period of time out of work, Dr. Welshofer again returned plaintiff to light duty work in December 2003. Plaintiff attempted light duty work, but was unable to complete his assigned job duties. Plaintiff continued to have difficulties with his lower back. Dr. Welshofer recommended that plaintiff see a lumbar spine surgeon. The workers' compensation carrier denied any further medical treatment and plaintiff was unable to see a lumbar spine surgeon. Up to this point, the carrier had been providing weekly benefits while plaintiff was out of work and had also been providing medical benefits.
7. Since the workers' compensation carrier denied further medical benefits, plaintiff sought medical treatment on his own. Plaintiff was seen by Dr. Getter of Oweida Orthopaedic as he had previously treated with him for a compensable workers' compensation back injury in 1998 that resulted in a fusion.
8. Plaintiff had suffered back injuries prior to his accident of October 1, 2003. In 1998, plaintiff suffered a compensable injury while at work, resulting in a lumbar fusion. After a period of time out of work, plaintiff was able to return to work for the employer. In 2000, plaintiff again suffered a compensable injury at work while lifting a ladder. As a result of this back injury, plaintiff was placed in physical therapy for several weeks and then allowed to return to work to continue normal job activities. This caused him some difficulties and problems with his lower back, but nothing that prevented him from completing his job duties. Based upon continued problems, plaintiff did seek medical treatment with Dr. Getter in October 2002 for ongoing stiffness and on and off complaints. Subsequently, Dr. Getter was unable to see plaintiff due to a lack of medical insurance.
9. Plaintiff was initially seen by Dr. Getter on January 13, 2004, and was initially placed on light duty work status for one week. This was unsuccessful and as of January 19, 2004, Dr. Getter placed plaintiff out of work.
10. When Dr. Getter initially saw plaintiff in January 2004 he ordered an MRI, which was completed on January 27, 2004. Upon reviewing the MRI results, Dr. Getter administered epidural steroid injections, which did not provide relief. Upon the failure of the epidural, Dr. Getter ordered long-acting pain medications, a TENS unit, Duragesic patches, OxyContin, and other prescription medication. Of these, only the OxyContin has provided relief, and Dr. Getter has continued plaintiff out of work to the present.
11. When plaintiff treated with Dr. Getter in January 2004, he told Dr. Getter that he had re-injured his back in October 2003. Dr. Getter confirmed that individuals who have problems such as plaintiff's history are more susceptible to re-injury. This is because individuals whose spines have been fused do not have the same motion that a person with a normal spine has and therefore their muscles do not work the same. Additionally, these individuals may have scar tissue that will build around the nerves in the area where the previous surgery has been done.
12. On October 4, 2005, Dr. Getter was provided a description of the October 2003 incident leading to plaintiff's injury, as plaintiff had described it during the hearing before the Deputy Commissioner. Based upon that description, Dr. Getter rendered the opinion, and the Full Commission finds as fact, that the type of injury described by plaintiff was consistent with the complaints plaintiff had during his initial visit with Dr. Getter on January 13, 2004, resulting from his injury of October 1, 2003. Plaintiff's attorney and Dr. Getter had the following colloquy:
 Q: And assuming the Industrial Commission finds, and again, there has already been a hearing in this matter and Mr. Faulkenberry has testified, and assuming the Industrial Commission finds that on approximately October 1st of 2003, that he was back at work and had been working and was moving a box of approximately 40 to 60 pounds, somewhere in that range, from a table to a pallet, if he was working on that date and moving a box from point A to point B and felt a sudden pain in his back, and that pain being sufficient that, as he stated, took him to his knees for a five or six minute period, would that type of injury that I'm describing be consistent with the complaint that you saw him for in January 13th, 2004?
 A: Yes.
 Q: And could you give us the basis of your opinion, Doctor?
 A: Having seen and treated a number of patients with this, and understanding the biomechanics of the spine, one of the worse things you can do for your back is to attempt to pick something up and hold it in your arms. That puts more force on your spine than anything else you can do and would make even a normal person prone to injury lifting that amount of weight.
 Q: So, Doctor, do you have an opinion satisfactory to yourself and with a reasonable degree of medical certainty that if the Industrial Commission finds that he was lifting a box in October of '03, and felt the pain that he described, that, do you have an opinion as to whether the injury you saw him for in January of '04 is a result of that incident which occurred a work in October of 2003?
 A: Yes.
 Q: What would that opinion be?
 A: That they were causally related.
 Q: And the basis of that opinion, please?
 A: Is, again, as I stated, having seen a number of patients that have done this and understanding the biomechanics of the spine, with his two-level fusion that he had had previously, that would make him more prone to injure his back.
 Q: And the complaints that he had of pain and the problems he had seem consistent with that type of activity?
 A: Yes.
13. Dr. Getter was of the opinion, and the Full Commission finds as fact, that plaintiff's two level fusion made plaintiff more prone to injuring his back. Dr. Getter opined to a reasonable degree of medical certainty, and the Full Commission finds as fact, that plaintiff's lifting of the box of cones in October 2003 resulted in the injury for which Dr. Getter began treating plaintiff in January 2004.
14. Dr. Getter reported that the October 1, 2003, injury was sufficient to place plaintiff out of work whereas, prior to this injury, plaintiff was able to complete his normal job duties. Dr. Getter's opinion was based upon his findings that plaintiff's pain level and complaints were different from before. Based upon Dr. Getter's medical judgment, plaintiff has proven he suffered a compensable injury on October 1, 2003, and plaintiff's continuing complaints are a result of his accident of October 1, 2003.
15. Currently, plaintiff continues to be out work as a result of his October 1, 2003, injury that occurred while lifting a box of cones. Plaintiff also continues to need medical treatment.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On October 1, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained a back injury as the result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff is entitled to compensation at the rate of $376.83 per week from January 19, 2004, to the present and continuing for the temporary total disability he sustained as a result of his injury by accident. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have Defendants provide all medical treatment arising from this injury by accident. N.C. Gen. Stat. §97-25.
4. Defendants are entitled to a credit for any disability payments made to plaintiff after January 19, 2004, from a disability plan funded entirely by the employer, if any. N.C. Gen. Stat. § 97-42.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to the plaintiff at the rate of $376.83 per week from January 19, 2004, to the present and continuing for the temporary total disability suffered by plaintiff. That compensation which has accrued shall be paid in a lump sum subject to the attorney's fee hereinafter approved. Additionally, defendants shall be entitled to receive an appropriate credit for employer provided disability benefits received by the plaintiff after January 19, 2004, if any.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of this injury by accident to the extent the same were incurred or are incurred in reasonable efforts to relieve pain, effect a cure, or lessen the period of disability.
3. An attorney's fee in the amount of twenty five percent (25%) of the compensation awarded herein is hereby approved for plaintiff's counsel, which shall be deducted from the aforesaid Award and paid directly to counsel for plaintiff. Of the continuing amount, defendants shall send every fourth compensation check to plaintiff's attorney.
4. Defendants shall pay the costs, which include an expert witness fee of $410.00 to Dr. Michael D. Getter.
This 28th day of July 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN